CASE 99.—ACTION BY CHARLES A. ROSS AGAINST THE
CITY OF LOUISVILLE.—June 17, 1910.

## City of Louisville v. Ross.

Appeal from Jefferson Circuit Court (Common
Pleas Branch, First Division).

WILLIAM H. FIELD, Judge.

Judgment for plaintiff, defendant appeals.—
Affirmed.

1.  Municipal Corporations—Police Officers—Discharge—Charges
    —Trial—Necessity.—Discharge of a police officer of the city of
    Louisville without a trial on charges filed before the board
    of public safety, as required by Ky. St. section 2874, relat-
    ing to cities of the fourth class, is void.

2.  Municipal Corporations— Policemen— Invalid Discharge. —
    Where the roster of policemen was not full when plaintiff
    was discharged from the force without a trial on charges,
    he was not required to proceed against a policeman ap-
    pointed to fill his place, and procure an adjudication that
    the office belonged to him before instituting a suit against
    the city to recover his salary until he was lawfully removed.

3.  Municipal Corporations— Police    Officers— Term. — Metro-
    politan Police Bill. —Bill of Rights, section 23, forbids the
    General Assembly to create any office, the appointment of
    which shall be for a longer time than a term of years, but
    Const. section 160, provides specifically the terms of office
    and the manner of election and appointment of various
    municipal officers, and then declares that other officers of
    towns or cities shall be elected by the qualified voters there-
    in, or appointed by the local authorities, and, when elected,
    their terms shall be four years, and until their successors shall
    have qualified. Held, that the Constitution did not limit the
    term of appointive municipal officers to a term of years, and
    hence the metropolitan police bill, providing for the appoint-
    ment of policemen to hold office either during good behavior
    or at the pleasure of the appointing power, was not unconsti-
    tutional as authorizing an appointment for a longer time
    than a term of years.

CLAYTON B. BLAKEY and JOSEPH S. LAWTON for appellant.

ARTHUR B. BENSINGER and KOHN, BAIRD, SLOSS & KOHN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER—
Affirming.

The appellee, Charles A. Ross, was at the time the cause of this litigation arose a member of the police department of the city of Louisville, doing duty as a member of the detective force. His pay was $2.75 per day. On the 6th day of January, 1908, without a trial and without charges being filed against him, he was discharged from the force by the board of safety. In June, 1908, he instituted this action to recover the salary due him as a policeman. On the 2d day of March, 1909, the board of safety filed written charges against him, and, having given him proper notice and an opportunity to be heard in his defense, found him guilty of the charges and dismissed him from the force. Between the date of the first discharge and the second there elapsed 420 days.

That the first discharge of appellee was illegal and void, because of the failure of the board of safety to give appellee a trial upon the charges made, as required by section 2874, Ky. St. (charter of cities of the fourth class), has been well settled by this court in the cases of Gorley v. City of Louisville, 104 Ky. 372, 41 S. W. 263, 20 Ky. Law Rep. 602, Gorley v. City of Louisville, 108 Ky. 789, 55 S. W. 886, 21 Ky. Law Rep. 1606, and Wagner v. City of Louisville, 117 S. W. 283.

Among other defenses, the city contends that appellee should first have instituted an action against

the policeman appointed to fill his place, and had an adjudication that the office belonged to him, and invokes the opinion in Wagner v. City, 117 S. W. 283, in support of this doctrine. In the case cited, when the policeman was discharged, the roster was full (that is to say, there were as many policemen on the force as the law authorized, to wit, 294), the complainant in that case having been discharged with nine others because it was found that the number of policemen on the force exceeded by ten the number authorized by law; and we said in that opinion that, inasmuch as the roster was full, some one of the men was holding the position which Wagner claimed. The case was decided upon two grounds: The first was that the police force was greater by 10 than the law authorized, and therefore the board of safety was bound to discharge 10 of the policemen, and had the legal right so to do. We also said, however, that even if we assumed that the discharge of Wagner was illegal, inasmuch as the roster was full, some one of the men was holding the position which Wagner claimed, and it was necessary for him, by direct action for the office, to have an adjudication that he was rightfully entitled to it. The opinion in the cited case does not support the contention of the city in the case at bar. When Ross was discharged the roster was not full, and, therefore, it could not be said that any one of the men held his place, because, after counting every one of the men on the force, there was still room left for Ross, and the stipulations of counsel show that nobody was appointed to take the place made vacant by the discharge of appellee. This being true, the case readily falls within the principles announced in Gorley v. City of Louisville, supra, that there was nobody for

Ross to sue, and the city is therefore bound to pay him for the time he was illegally discharged, unless it be held that the defense of the city, which we will now discuss, bars the appellee's right to recover.

The city pleaded as a defense to the action of appellee that the act under which he was appointed, and which is called the metropolitan police bill, is invalid because it authorizes the appointment of policemen for a longer time than a term of years, and that this is in violation of section 23 of the Bill of Rights, which forbids the General Assembly to create any office, the appointment of which shall be for a longer time than a term of years. There would be great force in this contention if the section of the Bill of Rights was the only provision in the Constitution concerning the matter in hand. But section 23 must be read in connection with section 160 of the Constitution, which provides specifically for the terms of office and the manner of election and appointment of various municipal officers, and then provides as follows: " * * * But other officers of towns or cities shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the General Assembly may, by a general law, provide; but when elected by the voters of a town or city, their terms of office shall be four years, and until their successors shall be qualified." Now, it will be observed that the last sentence of the quotation provides specifically the term of all officers who are to be elected by the people, but, very significantly, we think, is silent on the subject of the term for appointive municipal officers. After giving the matter a full consideration, we have reached the conclusion that it was not intended by the framers of the Constitution to limit the appointment of mu-

nicipal officers to a term of years, but to leave  to
the Legislature and the general council of cities the
power to create minor municipal offices and to ap-
point officers to them  who may hold either during
good behavior or the pleasure of the appointing pow-
er, as the law may direct.

We are strengthened in this conclusion by  the
consideration  that  policemen and firemen only be-
come proficient in the duties of their office after the
lapse of a considerable time, in which they are edu-
cated and drilled into efficiency; and it is very im-
portant for the public safety in large cities that there
should be a  well-disciplined and  skillful fire de-
partment and a well-disciplined and skillful police de-
partment; and this can only be done by appointing
men who will understand that they can hold their
offices during good behavior.  Nothing could be more
disastrous to the efficiency of a police force or  fire
department of a great city than to have it understood
that the men are only serving for a short time, and
that any turn in the political wheel will insure that
those on the defeated side of the election will lose
their places in order to make room for the partisans
cf the winning faction.  The life of a policeman or
fireman is  exceedingly  hazardous at best, and raw
recruits cannot be depended upon at the crucial time
as can men who have been disciplined by long ex-
perience and are deeply imbued with an enthusiasm
for the success of the force to which they belong, and
who will brave any danger or take any risk in order
to fully discharge their duty.  The great attraction
to young men of nerve and dash to enter the fire de-
partment or police department is the permanency of
the business.  No high-spirited young man will enter
upon so hazardous a calling if he knows that the per-

manency of his position depends upon the success or failure of his party at the polls in municipal elections. If the cities of this commonwealth are to be allowed efficient and faithful police departments and fire departments, that consummation will be secured only by upholding those acts of the Legislature which authorize the appointment of policemen or firemen for life or good behavior. And we see no good reason to strain the law to reach a conclusion which can only bring disaster to the people of the cities of the commonwealth. On the other hand, by limiting the language of section 23 of the Bill of Rights so far as it relates to cities to the greater municipal offices, the incumbents of which are elected by the people, every substantial result desired by the framers of the Constitution will be secured. It is true, in the opinion in Neumeyer v. Krakel, 110 Ky. 624, 62 S. W. 518, there is a doubt expressed as to whether or not the act in question was constitutional, for the reason urged by appellant here; but it is not decided. The court merely suggest it, and then expressly withhold a decision by saying that the question is not presented by the record under consideration.

For these reasons, the judgment of the trial court upholding the validity of the law involved in this litigation and awarding appellee his salary for the time elapsing between the illegal discharge and the subsequent and lawful dischage is affirmed.