SMITH v. BOARD OF EDUCATION OF LUDLOW, KY.

No. 4095.

District Court, E. D. Kentucky, Covington.

April 6, 1938.

John J. Howe and Rouse & Price, all of Covington, Ky., for plaintiff.

Jackson & Woodward, of Cincinnati, Ohio, for defendant.

SWINFORD, District Judge.

This case is submitted to the court on plaintiff's demurrer to the last six paragraphs of the defendant's answer. In order that the court's ruling on this demurrer can be better understood, a brief statement of the facts is necessary.

Ludlow, Ky., is a city of the fourth class. The statutory provisions for its school system, in so far as this case is concerned, are section 3587a-1 and succeeding sections under "Public Schools," cities of the fourth class, Carroll's Kentucky Statutes 1930 edition.

Section 3587a-2 provides as follows: "*Powers and duties.*—Every such board of education shall have general and supervising control, government and management of the public schools, including kindergartens, night and normal schools, vocational and high schools as hereinafter provided, and public school property in such city, with the right to use said property to promote 'public education in such ways as it may deem necessary and proper; shall exercise generally all powers in the administration of the public school

system therein, appoint such officers, agents and employees as it may deem necessary and proper and fix their compensation and term of office; shall have power to fix the time of its meetings, to make, amend and repeal rules and by-laws for its meetings and proceedings, for the government, regulation and management of the public schools and school property of such city, for the transaction of its business, and for the examination, qualification and employment of teachers, which rules and by-laws, when not inconsistent with the general law of the state, shall be binding on such board of education and all parties dealing with it until formally repealed by an affirmative vote of four members of said board; to provide for special and standing committees; to provide for the appointment of a medical inspector for the school, and to take such other steps as may be proper and necessary to secure and maintain the physical welfare of the pupils therein; to certify to the general council or the board of commissioners the amount of money necessary for the maintenance and improvement of the schools as hereinafter provided; and to purchase and hold all property, real and personal, deemed by it necessary for the purposes of public education, or for the investment of the public school funds; to build and construct improvements for such purposes and to hold or sell the same."

Section 3587a-13 provides as follows:

*"Superintendent; appointment, term, powers and duties; assistant superintendents; superintendent to appoint and dismiss teachers and employes.*—The board of education shall appoint a superintendent of schools whose term of office shall begin July first following his appointment and said appointment may be for a term of one, two, three, or four years, but shall not exceed four years. He shall be eligible to succeed himself. He may be removed by four members of the board for cause, and all vacancies shall be filled by the board until the first day of July following, when the temporary incumbent or some other person shall be appointed for a term of not more than four years as hereinbefore provided. The board of education may, on the nomination of the superintendent of schools, appoint as many assistant superintendents as it may deem necessary, whose compensation shall be fixed by the board and who may be removed for cause by the superintendent,

with the approval of four members of the board. The superintendent of schools shall qualify by taking the oath prescribed by law, and shall have general supervision, subject to the control of the board, of the course of instruction, discipline and conduct of the schools.

"All appointments, promotions, dismissals and transfers of teachers and truant officers shall be made only upon the recommendation of the superintendent and with the approval of the board. The superintendent shall have the power to suspend any teacher, pupil or truant officer for cause deemed by him sufficient, and the board of education shall take such action upon the restoration or removal of such person as it may deem proper. All appointments and promotion of teachers shall be made upon the basis of merit. The superintendent of schools shall devote himself exclusively to the duties of his office and shall have power to appoint clerks whose number and salary shall be fixed by the board; and shall have the power to remove the same; shall exercise general supervision over the schools of the city, examine their condition and progress, and shall keep himself informed of the progress of education in other cities. He shall advise himself of the needs of extension of the school system of the city, shall make a report from time to time as fixed by the rules or directed by the board, and shall be responsible to the board for the condition of the instruction and discipline of the school. The term 'teacher' as used herein shall include supervisor, supervising principals, and principals. All laws in conflict herewith are hereby repealed."

At a regular meeting of the board of education held on March 1, 1932, the following resolution pertaining to the plaintiff, John W. Smith, was duly adopted;

"The teachers and Salary Committee recommended that the salary of the Superintendent be set at $4,000.00 per year with an increase of $150.00 per year and that Mr. Smith be employed and given a contract for four years.

"Moved by Mr. McKnight seconded by Mr. Krieger that the Superintendent's salary be set at $4,000.00 per year and that Mr. Smith be employed with contract for four years with an increase of $150.00 per year."

On March 22, 1934, the board removed the plaintiff from his office as superin-

tendent. After litigation in the Kenton circuit court and an appeal to the Kentucky Court of Appeals it was determined judicially that the discharge and removal was wrongful and that the plaintiff was entitled to continue as superintendent. John W. Smith v. Ludlow Board of Education, 264 Ky. 150, 94 S.W.2d 321.

The mandate of the court reversing the lower court was not issued until the winter term, February 25, 1936, from the Kentucky Court of Appeals. A judgment on the mandate was entered in the Kenton circuit court on June 9, 1936, which was within twenty-four days of the date when the term of office of plaintiff would expire.

The plaintiff at the time this action was instituted was a citizen of the state of Ohio. He seeks to recover damages by reason of the alleged breach of contract. He claims the amount of salary which would have been paid had he been allowed to continue in his office together with attorneys fees and expenses incurred by reason of the litigation in the state court.

The first paragraph of the answer is a general denial of the allegations in the petition.

The second paragraph is a plea of res judicata. The defendant pleads that the opinion of the Kentucky Court of Appeals in the Smith v. Ludlow Board of Education Case, supra, holds that the plaintiff is an officer and not an employee.

■ The opinion does not judicially determine this question. It speaks of Smith as both an "officer" and an "employee," and it is apparent that this question was never directly presented in the state court case. The demurrer to paragraph 2 is sustained.

■ The third paragraph of the answer pleads that the plaintiff was an officer; that the only function of the board of education was to appoint him, fix his term of office and salary. The plaintiff as superintendent of schools was an officer and not an employee.

The wording of the statute, section 3587a-13, clearly makes the superintendent an officer and not an employee. 22 R. C.L. 372. The use of the terms "appoint" and "officer" in the act cannot be ignored. It was clearly the intention of the Legislature to create the office of school superintendent in cities of the fourth class.

Otherwise why would they have used the word at all? The superintendent was to be head of the school. If the term "officer," with all its legal significance, was not to apply to him, then to whom should it apply? It is the whole purpose of the school law, both in counties and municipalities, to remove the schools as far from politics as possible. One of the universally accepted ways of doing this is to place in control and management of the technical school work a professional school man. It cannot be very forcefully argued that the head of the school system was intended to be an employee and some one or more of his subordinates were to be officers. An examination of the act will show clearly that employment was to pertain to teachers. In section 3587a-2 we find this language: "for the examination, qualification and employment of teachers."

We also find in the act under section 3587a-5 the form of oath that each member of the school board was required to take. In this oath we find this language: "that he will not be influenced during his term of office by any consideration except that of merit or fitness in the appointment of officers or engagement of employees."

In discussing officers the United States Supreme Court, in the case of United States v. Hartwell, 6 Wall. 385, 73 U.S. 385, 18 L.Ed. 830, gave the following definition (page 393). "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties. The employment of the defendant was in the public service of the United States. He was appointed pursuant to law, and his compensation was fixed by law. Vacating the office of his superior would not have affected the tenure of his place. His duties were continuing and permanent, not occasional or temporary. They were to be such as his superior in office should prescribe. A government office is different from a government contract. The latter from its nature is necessarily limited in its duration and specific in its objects. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other."

2 Bouv.Law Dict., Rawle's Third Revision, p. 2765, defines a public office as follows: "Public Office.—Where by virtue

**332**

of law, a person is clothed, not as an incidental or transient authority, but for such time as denotes duration and continuance, with independent power to control the property of the public, or with public functions to be exercised in the supposed interest of the people, the service to be compensated by a stated yearly salary, and the occupant having a designation or title, the position so created is a public office."

As to so much of this paragraph that pleads that the plaintiff is an officer the demurrer is overruled. As to that part that pleads the contract is null and void the demurrer is sustained. Even though it is judicially determined that the plaintiff is an officer, I am unable to see why the resolution appointing him superintendent is null and void. This is not a contract but an act of the board appointing the plaintiff to fill the office under the authority of the statute.

■ The demurrer to paragraph 4 should be overruled as to part and sustained as to part. This plea is a good defense to Smith's claim for the amount of salary paid to the superintendent Brown from June 30, 1934, until June 30, 1936, during which time Brown was the duly appointed superintendent. From March 23, 1934, until June 30, 1934, Brown was "acting" superintendent. This is construed to mean an assistant superintendent as provided by section 3587a-13. There was no superintendent de facto at that time and Smith, the de jure officer, is entitled to his salary at the rate of $4,000 per year, and additions as provided by the resolution of the board of date March 1, 1932. Smith is also entitled to recover the difference between the salary fixed by the resolution of March 1, 1932, and the amount of salary actually paid to Brown from June 30, 1934, until June 9, 1936, the date the order on the mandate was entered. From June 9, 1936, until June 30, 1936, Smith is entitled to his full salary as superintendent of the Ludlow Schools. The question presented by the demurrer to this paragraph of the defendant's answer is one that has given me great concern. The question has been decided both ways and there are two well-defined lines of respectable authority. To state the question concisely, the court is to determine whether or not a municipality can be required to pay twice for the same service.

■ A city school board is a municipal corporation. Brown v. Newport Board of Education, 108 Ky. 783, 57 S.W. 612,

■ A municipality can speak only by its records. Citizens' National Bank v. Town of Loyall, 262 Ky. 39, 88 S.W.2d 952.

There can be no question here as to just what the records of the school board show and this is therefore what they are bound by and must stand on.

■ The rule that seems to prevail in most jurisdictions is that a municipality which has paid to a de facto officer the salary of the office occupied by him at the time of the payment, before judgment of ouster, is not liable to the de jure officer for the salary for the same period. My research and investigation lead me to the conclusion that this rule is followed in the majority of states.

The minority rule holds that the salary of a public office is incident to the title of the office and a municipality is liable to the de jure officer for his salary during the time he was out of possession of the office although it was paid to a de facto officer.

A very comprehensive discussion of this question will be found in the case of City of Cleveland v. Luttner, 92 Ohio St. 493, 111 N.E. 280, and note to this case found in Ann.Cas.1917D, page 1134.

The Ohio Supreme Court in this case followed the minority rule, but the opinion is accompanied with a very forceful dissenting opinion by Jones, J.

In some jurisdictions the minority rule has been adopted by statute.

The Court of Appeals of Kentucky stated the position of this state in the case of Walters v. Paducah, 123 S.W. 287, in which the court said (page 288): "In every case there is necessarily a contest between the de facto and de jure officers. The duties of the office must be performed. The city, through its officers, must recognize one or the other. That officer who has possession of the office and is in charge of all its records, and who under the ordinances of the general council pays out the money of the city to settle claims against it, and is thus recognized as the acting officer, is as a matter of fact the de facto officer, although another party may be assuming to perform certain duties of the office, without recogni-

tion of his right to do so by the authorities of the municipality. The municipality will not be held responsible for the mistake of its officers in recognizing the wrong claimant. The question does not turn on whether or not a salary was paid to the de facto officer with notice of a contest or claim by another party. In nearly every instance such is the case. The question turns on whether or not payment is made before or after the judgment of ouster. In the case before us, payment was made before judgment of ouster. That being the case, the city of Paducah will not be required to pay the same salary for the same period of time to the de jure officer."

This same rule is announced by our Kentucky court in the following cases: Nall v. Coulter, 117 Ky. 747, 78 S.W. 1110, 25 Ky.Law Rep. 1891, 4 Ann.Cas. 671; Bradley v. Georgetown, 118 Ky. 735, 82 S.W. 303, 26 Ky.Law Rep. 614; Wagner v. City of Louisville, Ky., 117 S.W. 283; Kammerer v. City of Louisville, 142 Ky. 848, 135 S.W. 411; City of Louisville v. Ross, 138 Ky. 764, 129 S.W. 101; Gorley v. City of Louisville, 108 Ky. 789, 55 S.W. 886, 21 Ky.Law Rep. 1606; City of Ashland v. Barney's Adm'r, 231 Ky. 835, 22 S.W.2d 255.

■ The reason for this rule is that disbursing officers charged with the duty of paying official salaries should have a right, on the ground of public policy, to rely on the apparent title of the person actually performing the duties of the office. 22 R.C.L. 544. However, a de jure officer may recover from the municipality so much of the salary to which he was entitled which has not been paid to the de facto officer. Dolan v. New York, 68 N.Y. 274, 23 Am.Rep. 168. Neither can the municipality plead payment to a de facto officer as a defense to an action against it by the de jure officer after a judgment has been rendered establishing the right to the office. Scott v. Crump, 106 Mich. 288, 64 N.W. 1, 58 Am.St.Rep. 478; McVeany v. New York, 80 N.Y. 185, 36 Am. Rep. 600.

■ The demurrer to paragraph 5 pleading the Kentucky statute of frauds, Ky.St. § 470, should be sustained. Only those facts well pleaded are admitted on demurrer. Hubbard v. Lowe, D.C., 226 F. 135, Blanchar v. City of Casper, 10 Cir., 81 F.2d 452.

■ The exhibit filed with the answer shows that a minute was made of the resolution appointing John W. Smith superintendent. When the exhibit filed with the pleading contradicts the pleading the exhibit controls. Jones v. Peacock, D.C., 3 F.2d 827; Stockton Commission Co. v. Narragansett Cotton Mills, D.C., 11 F.2d 618.

A minute of the action of the board is sufficient writing to comply with section 470, Kentucky Statutes. In the case of Cumberland Telephone & Telegraph Co. v. Cartwright Creek Telephone Co., 128 Ky. 395, 108 S.W. 875, 32 Ky.Law Rep. 1357, the court said (page 878): "There is no merit in appellant's plea of the statute of frauds. In order for appellees to assert the rights conferred upon them by the contracts between the city, the fiscal court, and appellant, it was not necessary that another and independent writing should have been entered into between the latter and appellees; and as the contract between appellant and the city of Springfield was in the form of a printed and published ordinance, adopted by the city council, and that of appellant with the fiscal court was in the form of an order entered of record, it was not necessary that separate writings should have been entered into by the parties to make these contracts binding on appellant. Having accepted these contracts and enjoyed the franchises they granted, appellant is estopped to repudiate any of their provisions. Graves County Water Co. v. Ligon, 112 Ky. 775, 66 S.W. 725 [23 Ky.Law. Rep. 2149]."

■ The demurrer to paragraph 6 should be sustained. It was the action of the board that required the plaintiff to seek other employment. If he was compelled to leave the state to find it, that act cannot inure to the benefit of the agency that made this necessary. Aside from this, the decision of the state court granting the injunctive relief sought pertains to the time he was admittedly a resident of the school district.

■ The demurrer to paragraph 7 is sustained. The rule in damage cases for breach of contract, in which the employer is entitled to deduct from the contract price the earnings of the employee, during the time of breach, has no application to the case of an officer suing for his salary, for the reason that in the latter

case the liability is not upon contract. Fitzsimmons v. Brooklyn, 102 N.Y. 536, 7 N.E. 787, 55 Am.Rep. 835, is a leading case upon this question. It is cited and followed in most jurisdictions.

There is much discussion in the briefs of counsel for both plaintiff and defendant with reference to the decision by the Kentucky Court of Appeals in the case of Smith v. Board of Education of Ludlow, supra. I have carefully examined this case and have referred to it repeatedly in the preparation of this opinion. I think it decides but one thing. That the plaintiff, John W. Smith, had been wrongfully removed from the office of Ludlow school superintendent.

It will be noticed that I have in this opinion, with reference to paragraphs 3 and 4 of the answer, sustained the demurrer to part of the paragraph and overruled it as to part. Under the rule laid down in the case of Illinois Central R. Co. v. Edelen, 154 Ky. 78, 156 S.W. 1029, the demurrer to each of these paragraphs should be overruled, as it went to the whole paragraph and a part of each of these paragraphs was not demurrable. I have merely taken this method of passing on the questions presented in order to avoid delay and further pleading and to fully rule on the case.